# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MATTHEW THOMAS et al., <br><br> Plaintiffs, <br><br> v. <br><br> MICHAEL RICHARD POMPEO et al., <br><br> Defendants. | Civil Action No. 19-cv-1050 (ESH) |

## MEMORANDUM OPINION

Plaintiffs Matthew Thomas and Akbar Masoumi bring this action against (1) Michael Richard Pompeo, in his official capacity as United States Secretary of State; (2) the United States Department of State; (3) Christopher A. Wray, in his official capacity as Director of the Federal Bureau of Investigation; (4) the Federal Bureau of Investigation; (5) Steven C. Bondy, in his official capacity as Charge d'Affaires to the United Arab Emirates; and (6) the United States Embassy in Abu Dhabi (collectively, "defendants"), to compel them to complete administrative processing and adjudicate Mr. Masoumi's visa application, which was filed over three years ago. Plaintiffs argue it has been unreasonably delayed and request relief pursuant to either the Mandamus Act, *see* 28 U.S.C. §1361, or the Administrative Procedure Act, *see* 5 U.S.C. § 701 *et seq*. (*See* Compl. at 9–10 [ECF 4].) Before the Court is defendants' motion to dismiss. (*See* Mot. to Dismiss [ECF 15].) For the reasons stated herein, the Court will deny defendants' motion.

## BACKGROUND

I.  **FACTUAL BACKGROUND**

   A.  **Presidential Proclamation 9645**

On September 24, 2017, President Donald Trump issued the "Presidential Proclamation Enhancing Vetting Capabilities and Processes for Detecting Attempted Entry Into the United States by Terrorists or Other Public-Safety Threats." *See* 82 Fed. Reg. 46,161 ("the Proclamation"). Pursuant to Section 212(f) of the Immigration and Nationality Act ("INA"):

> Whenever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States, he may by proclamation, and for such period as he shall deem necessary, suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants, or impose on the entry of aliens any restrictions he may deem to be appropriate

8 U.S.C. § 1882(f). In light of the Department of Homeland Security's assessment that certain countries "have 'inadequate' identity-management protocols, information-sharing practices, and risk factors," *see* Proclamation Sec. 1(g), the President invoked his power under INA Section 212(f) and restricted the entry of nationals from seven countries: Chad, Iran, Libya, North Korea, Syria, Venezuela, and Yemen. *See id.* at Sec. 1(h)(ii).[1] For example, subject to some exceptions, the Proclamation suspended the entry of all nationals of Iran into the United States as either immigrants or non-immigrants due to the fact that "Iran regularly fails to cooperate with the United States Government in identifying security risks, fails to satisfy at least one key risk criterion, is the source of significant terrorist threats, and fails to receive its nationals subject to final orders of removal from the United States." *See id.* at Sec. 2(b)(i).

---

[1] The Supreme Court has since upheld the Proclamation as a valid use of this authority. *See Trump v. Hawaii*, 138 S. Ct. 2392, 2415 (2018) ("The Proclamation is squarely within the scope of Presidential authority under the INA.").

The Proclamation, however, provides for case-by-case waivers. *See id.* at Sec. 3(c). An individual otherwise banned under the Proclamation may be granted a waiver if three conditions are met: "(A) denying entry would cause the foreign national undue hardship; (B) entry would not pose a threat to the national security or public safety of the United States; and (C) entry would be in the national interest." *Id.* at Sec. 3(c)(i)(A)-(C). Beyond specifying these three conditions, the Proclamation "did not instruct the Secretary of State and Secretary of Homeland Security on how they should implement this waiver provision," *see Didban v. Pompeo*, 2020 WL 224517, at *2 (D.D.C. Jan. 15, 2020)—instead, it provided that the Secretaries of State and Homeland Security would issue guidance to address the "standards, policies, and procedures" for determining when an individual should receive a waiver. *See* Proclamation at Sec. 3(c)(ii). The Proclamation did include, however, a non-exhaustive list of individuals who may be appropriate for a waiver, such as those who "seek[] to enter the United States to visit or reside with a close family member . . . who is a United States citizen." *Id.* at Sec 3(c)(iv).

The State Department's webpage on the Proclamation explains that "[t]here is no separate application for a waiver." *See* U.S. Dep't of State, June 26 Supreme Court Decision on Presidential Proclamation 9645 ("State Department Guidance"), https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/presidential-proclamation-archive/june_26_supreme_court_decision_on_presidential_proclamation9645.html (last visited January 30, 2020).[2] Instead, "[a]n individual who seeks to travel to the United States

---

[2] When considering a motion to dismiss, the Court may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies." *Ward v. D.C. Dep't of Youth Rehabilitation Servs.*, 768 F. Supp. 2d 117, 119 (D.D.C. 2011) (internal citations and quotation marks omitted). However, courts may also consider "matters about which the Court may take judicial notice." *Hinton v. Corrections Corp. of Am.*, 624 F. Supp. 2d 45, 47 (D.D.C. 2009). And "[c]ourts in this jurisdiction have frequently taken judicial notice of information posted on

should apply for a visa and disclose during the visa interview any information that might demonstrate that he or she is eligible for a waiver," and "[a] consular officer will carefully review each case to determine whether the applicant is affected by the Proclamation and, if so, whether the case qualifies for a waiver." *Id.* This mirrors the Proclamation itself, which provided that waivers are "issued by a consular officer as part of the visa adjudication process." *See* Proclamation at Sec. 3(c)(iii).

### B. Mr. Masoumi's Visa Application

Mr. Thomas, a United States citizen, filed a visa petition on January 6, 2017, on behalf of his fiancé, Mr. Masoumi, an Iranian citizen. (*See* Compl. ¶ 15.) The petition was approved by USCIS on April 24, 2017. (*See id.* ¶ 16.) Mr. Masoumi attended an interview at the United States Embassy in Abu Dhabi on August 16, 2017. (*See id.*) "At the end of his interview, the adjudicating officer gave Mr. Masoumi a document which stated that his 'visa application is temporarily refused under section 221(g) of the US Immigration and Nationality Act' pending the completion of administrative processing." (*Id.* ¶ 17.) The same day, the Embassy emailed Mr. Masoumi a questionnaire seeking information "such as 15 years of travel, address, and employment history; the names and dates of birth of his siblings; and his social media account handles"—Mr. Masoumi completed and returned the survey later that day. (*Id.* ¶ 18.)

Plaintiffs made several inquiries about the status of Mr. Masoumi's visa application over the course of the next several months, with no "meaningful response." (*Id.* ¶ 19.) Instead, almost eight months after Mr. Masoumi's interview, the Embassy sent him the same questionnaire and again requested that he fill it out; and again, Mr. Masoumi completed and

---

official public websites of government agencies." *Moghaddam v. Pompeo*, 2020 WL 364839, at *9 n.5 (D.D.C. Jan. 22, 2020) (internal quotation marks omitted)

returned it the same day. (*See id.* ¶ 21.) Eventually, Mr. Thomas reached out to United States Senator Tammy Duckworth, who also reached out to the Embassy on plaintiffs' behalf. (*See id.* ¶ 22). On October 22, 2018, Senator Duckworth's office received a response to one of its inquiries from the Embassy, which said that "Mr. Masoumi's case is undergoing administrative processing in order to qualify for a waiver under Presidential Proclamation 9645." (*See id.* ¶ 23 (internal quotation marks omitted).) A later request for information by Mr. Thomas was met with the following response—"[t]here is no need for you to write, email, call or fax the Embassy with inquiries on the case, as that will not speed processing." (*Id.* ¶ 25 (internal quotation marks omitted).)

After waiting more than nineteen months for the adjudication of Mr. Masoumi's visa application and waiver, which they describe as "a time-consuming and anxiety-inducing process" (*id.* ¶ 30), plaintiffs filed an action in this Court in April 2019. Plaintiffs alleged "that [they] live every day in fear that Mr. Masoumi's family, his neighbors, or his government will find out that he is in a same-sex relationship with an American and that he will suffer violence or death as a result." (*Id.* ¶ 30.) Plaintiffs thus requested that this Court "[o]rder Defendants and those acting under them to take all appropriate action to adjudicate Plaintiffs' petition for a fiancé(e) visa without further delay" under the Administrative Procedure Act or the Mandamus Act. (*Id.* ¶ 47.) Defendants have now filed a motion to dismiss, citing *inter alia*, the doctrine of consular nonreviewability, mootness, and the failure of plaintiffs to state a claim under either the APA or the Mandamus Act.

# ANALYSIS

## I. LEGAL STANDARDS

"A court must dismiss a case pursuant to Federal Rule 12(b)(1) when it lacks subject matter jurisdiction." *Moghaddam v. Pompeo*, 2020 WL 364839, at *3 (D.D.C. Jan. 22, 2020). "Plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Am. Farm Bureau v. U.S. E.P.A.*, 121 F. Supp. 2d 84, 90 (D.D.C. 2000). When determining if it has jurisdiction, a court considers the complaint and, "where necessary, . . . the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coalition for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert v. Nat'l Acad. Of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992) (internal quotation marks omitted). Moreover, "the court must . . . accept all of the factual allegations in the complaint as true." *Jerome Stevens Pharm., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1253 (D.C. Cir. 2005) (internal quotation marks and brackets omitted).

"Pursuant to Rule 12(b)(6), a party may move to dismiss a complaint on grounds that it 'fail[s] to state a claim upon which relief can be granted.'" *Moghaddam*, 2020 WL 364839, at *3 (quoting Fed. R. Civ. Pr. 12(b)(6)). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. *Id.* at 1964–65 (internal quotation marks and brackets omitted). "In evaluating a motion to dismiss, the Court must accept the

factual allegations in the complaint as true and draw all reasonable inferences in favor of plaintiff." *Moghaddam*, 2020 WL 364839, at *3 (internal quotation marks omitted). Furthermore, in addition to facts alleged in the complaint a court may consider "documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies." *Ward v. D.C. Dep't of Youth Rehabilitation Servs.*, 768 F. Supp. 2d 117 (D.D.C. 2011) (internal quotation marks and citation omitted).

## II. CONSULAR NONREVIEWABILITY

First, defendants argue that the Court must dismiss plaintiffs' case on the grounds of consular nonreviewability, which precludes review of consular officers' decisions on visa applications. *See Saavedra Bruno v. Albright*, 197 F.3d 1153, 1164 (D.C. Cir. 1999) ("This circuit has recognized, as has every circuit to consider the issue, that the courts are without authority to displace the consular function in the issuance of visas." (internal quotation marks omitted)). The doctrine can be quite far-reaching—it "applies even where it is alleged that the consular officer failed to follow regulations, where the applicant challenges the validity of the regulations on which the decision was based, or where the decision is alleged to have been based on a factual error." *Van Ravensway v. Napolitano*, 613 F. Supp. 2d 1, 4 (D.D.C. 2009) (internal quotation marks omitted).

Nevertheless, the Court agrees with the other two judges in this district who have considered this issue and have concluded that the doctrine does not extend so far as to address the situation here. *See Moghaddam*, 2020 WL 364839, at *5–*6; *see also Didban*, 2020 WL 224517, at *4.³ Plaintiffs allege that defendants "have failed to complete administrative

---

³ Judge Cooper issued his decision in *Didban* on January 15, 2020. Exactly one week later, on January 22, Judge Kollar-Kotelly issued her opinion in *Moghaddam*. The two judges agreed on all issues except the application of the factors laid out in *Telcommc'n Research & Action Ctr. v.*

7

processing and issue a final decision on Plaintiffs' petition for more than 19 months." (Compl.
¶ 34.) As in *Moghaddam*, plaintiffs here are not challenging the *decision* of a consular officer to deny their visa application, "but rather the *failure* of Defendants to, properly and within a reasonable time, perform their mandatory, non-discretionary duty to adjudicate [plaintiff's] visa application and waiver, which clearly remains pending and has not been denied." 2020 WL 364839, at *5 (internal quotation marks omitted) (emphasis added). Moreover, "the doctrine of consular nonreviewability is not triggered until a consular officer has made a *decision* with respect to a particular visa application." *Nine Iraqi Allies Under Serious Threat Because of Their Faithful Service to the U.S. v. Kerry*, 168 F. Supp. 3d 268, 290 (D.D.C. 2016) (emphasis in original); *see also Didban*, 2020 WL 224517, at *4 ("[W]hile the doctrine of consular non-reviewability would almost certainly bar this Court from evaluating a consular officer's denial of a waiver, it does not prevent the Court from considering Plaintiffs' claim that the Government has unreasonably delayed rendering a decision."). The doctrine of consular nonreviewability thus fails to strip the Court of jurisdiction in this case.

## III. MOOTNESS

Defendants next argue that plaintiffs' case cannot be heard because it is moot. (*See* Mot. to Dismiss at 15–17.) "Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *Conservation Force, Inc. v. Jewell*, 733 F.3d 1200, 1204 (D.C. Cir. 2013) (quoting *Iron Arrow Honor Soc'y v. Heckler*, 464 U.S. 67, 70 (1983)). And "the doctrine of mootness requires a federal court to refrain from

---

*FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*"). Judge Cooper concluded that the *TRAC* factors favored the government as a matter of law, so he granted the defendants' motion to dismiss. *Didban*, 2020 WL 224517, at *6. Judge Kollar-Kotelly, on the other hand, concluded that application of the *TRAC* factors was premature, so she denied the defendants' motion to dismiss. *Moghaddam*, 2020 WL 364839, at *7.

deciding [a case] if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future." *21st Century Telesis Joint Venture v. FCC*, 318 F.3d 192, 198 (D.C. Cir. 2003) (internal quotation marks and alterations omitted).

Again, the Court agrees with the two judges in this district who have addressed mootness in this situation and have declined to dismiss on mootness grounds. Defendants correctly observe that "where a plaintiff seeks to compel the immigration authorities to adjudicate an application for immigration benefits, and the application is thereafter adjudicated, the case is moot and must therefore be dismissed for lack of subject matter jurisdiction." (Mot. to Dismiss at 17.) But that is not the case here, for plaintiffs' application has *not* been finally adjudicated. Like the plaintiffs in *Moghaddam*, plaintiffs here "are specifically seeking adjudication of . . . *waiver* eligibility," *not* of their visa application. 2020 WL 364839, at *5; *see also id.* ("To the extent that Plaintiffs phrase their requested relief as adjudication of her visa application, Plaintiffs do so because they view the waiver eligibility determination as part of the visa application process."). As a result, a decision by this Court to require defendants to process Mr. Masoumi's waiver application would affect the parties' rights, and therefore, the case is not moot. *See Didban*, 2020 WL 224517, at *4 ("Because the Government's adjudication of [plaintiff's] waiver application has a more than speculative chance of affecting her legal rights, the case is not moot.").

9

## IV. ADMINISTRATIVE PROCEDURE ACT

Defendants next argue that plaintiffs have not stated a claim under the Administrative Procedure Act. Although defendants' arguments are at times difficult to parse,[4] it appears they are making the following arguments: (1) review is barred under the APA because review over the issues in this case is precluded by the doctrine of consular nonreviewability; (2) review is barred under the APA because waiver and visa applications are "committed to agency discretion," *see* 5 U.S.C. § 701(a)(2); and (3) as a matter of law, plaintiffs have not suffered an "unreasonable delay." *See id.* § 706.

At the outset, the Court rejects defendants' argument that 5 U.S.C. § 701(a)(1) and § 702, which limit APA review based on other statutes or limitations pre-dating the APA, preclude review here. As noted above, the consular nonreviewability doctrine, upon which defendants primarily base this argument, does not apply. And defendants' argument that "it is implausible that Congress would permit review of Executive decisions to restrict entry in the first instance" is not reflective of the issue in this case—plaintiffs do not seek review of the executive decision (*i.e.* the Proclamation) itself, but the adjudication of a waiver application.

Next, the Court disagrees that this issue is committed to agency discretion. First, 5 U.S.C. § 701(a)(2) is "a very narrow exception that applies only in rare instances." *Cody v. Cox*, 509 F.3d 306, 610 (D.C. Cir. 2007). This is because "[c]ourts begin with the strong presumption that Congress intends judicial review of administrative action, and that the court will not deny review unless there is persuasive reason to believe that such was the purpose of Congress." *Moghaddam*, 202 WL 364839, at *6 (internal quotation marks omitted). Although presidential

---

[4] The same observation was made by Judge Kollar-Kotelly in *Moghaddam*. *See* 2020 WL 364839, at *4 (noting it was "difficult to separate [defendants'] arguments in the briefing.").

actions—such as the Proclamation—are not subject to APA review, *see Franklin v. Massachusetts*, 505 U.S. 788, 801 (1992), that does not mean that the failure to adjudicate a waiver is also unreviewable.

Moreover, just because the Proclamation "is not intended to, and does not, create any right or benefit," *see* Proclamation at Sec. 9(c), does not mean that the defendants have completely unchecked discretion. Plaintiffs cite to guidance released by the State Department saying that "[a] consular officer *will* carefully review each case to determine whether the applicant is affected by the Proclamation and, if so, whether the applicant qualifies for an exception or a waiver." *See* State Department Guidance, *supra* (emphasis added); *cf. Trump v. Hawaii*, 138 S. Ct. at 2422 (concluding that the policy was based on a "legitimate national security interest" in part because of the existence of a waiver program). Furthermore, internal guidance issued by the State Department provides that "each applicant who meets the conditions described in the question posed above *must* be considered for a waiver." *See Moghaddam*, 2020 WL 364839, at *8 (internal quotation marks omitted) (emphasis altered).[5] Thus, while defendants may have discretion as to whether they grant a waiver, and the Proclamation does not entitle any particular individual to a waiver, defendants must adhere to their own policies that ultimately require adjudication of waiver applications. *See Padula v. Webster*, 822 F.2d 97, 100 (D.C. Cir. 1987) ("It is well settled that an agency, even one that enjoys broad discretion, must adhere to voluntarily adopted, binding policies that limit its discretion."). The Court agrees with Judge Kollar-Kotelly that, based on government pronouncements, "officers do not have the

---

[5] This guidance has been released to the public at the "virtual reading room" on foia.state.gov and is thus the sort of public government information of which the Court is entitled to take notice. *See Moghaddam*, 2020 WL 364839, at *9 n.5; *see also* "Operational Q&As on P.P. 9645 in light of the U.S. Supreme Court orders of December 4, 2017, lifting lower court injunctions and pursuant to guidance in 17 STATE 97682" (Jan. 23, 2018).

discretion to *never* act on a waiver application." *Moghaddam*, 2020 WL 364839, at *10 (emphasis added); *see also Najafi v. Pompeo*, 2019 WL 6612222, at *5 (N.D. Cal. Dec. 5, 2019) (concluding that "[s]uch mandatory language demonstrates a decision is required"); *cf. M.J.L. v. McAleenan*, 2019 WL 6039971, at *5 (W.D. Tex. Nov. 13, 2019) (concluding, in the context of U-Visas, that "a discretionary decision to grant or deny an application is distinct and separate from the nondiscretionary duty to adjudicate those applications").

Lastly, although neither the Proclamation nor any other source of law provides a timeline by which waivers are to be adjudicated, that is not fatal to plaintiffs' claim. "[A] lack of timeframe alone does not render the statute optional." *M.J.L.*, 2019 WL 6039971, at *5 (internal quotation marks omitted). "That the [Proclamation] does not specify a timeframe for action . . . is immaterial; the APA's requirement of action within a reasonable time applies." *Hamandi v. Chertoff*, 550 F. Supp. 2d 46, 50 (D.D.C. 2008). As the Court of Appeals has held, whether an action is unreasonably delayed requires consideration of the following:

> (1) [T]he time agencies take to make decisions must be governed by a 'rule of reason'; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*Telcommc'n Research & Action Ctr. v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984) ("*TRAC*") (internal citations and quotation marks omitted). However, "[d]etermining whether [defendants are] performing [their] duty within a reasonable amount of time within the meaning of 5 U.S.C. § 706(1) is a fact intensive inquiry." *Nio v. U.S. Dep't of Homeland Sec.*, 270 F. Supp. 3d 49, 66; *see also Mashphee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir.

2003) ("Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court."). As a result, the Court concludes that any determination of whether defendants have unreasonably delayed adjudication of Mr. Masoumi's waiver is premature at this juncture.[6]

## V.     MANDAMUS

As noted above, the Court has found that plaintiffs stated a claim under the Administrative Procedure Act for unreasonable delay. As a result, the Court need not address plaintiffs' mandamus claim at this time. *See Fornaro v. James*, 416 F.3d 63 (D.C. Cir. 2005) (stating that mandamus relief is available only when "there is no other adequate remedy available to plaintiff" (internal quotation marks omitted)).

## CONCLUSION

For the foregoing reasons, the Court concludes that it has jurisdiction to hear this case, and that plaintiffs have stated a claim under the APA. As a result, the Court denies defendants' motion to dismiss. A separate Order accompanies this Memorandum Opinion.



ELLEN S. HUVELLE
United States District Judge

Date: February 7, 2020

---

[6] Judge Cooper applied the *TRAC* factors and concluded that "Plaintiffs have failed to establish that the two-year delay in processing [the] waiver application is unreasonable." *Didban*, 2020 WL 224517, at *6. While defendants in this case may also ultimately prove that the delay in adjudicating Mr. Masoumi's waiver application is not unreasonable, the Court concludes that undertaking such a fact-bound analysis at this stage is premature.

13